UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGEL PERRY,

                                                                                                  DECISION AND ORDER

                                 Plaintiff,

                                                                                                  18-CV-6443L

                           v.

JOHN A. GUERRIERI, DDS PLLC,

                                 Defendant.
_____

        Plaintiff, a dental assistant, brings this action against defendant, a dentist who employed her for three-and-a-half months from September 20, 2016 through January 4, 2017. (Amended Complaint, Dkt. #23).

        Plaintiff alleges that the defendant subjected her to gender-based discrimination, a hostile work environment, and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq. ("Title VII") and New York State Human Rights Law ("NYHRL"). She further claims that she was subjected to discrimination in violation of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. §2000ff, et. seq. ("GINA"), and that defendant breached her employment contract and violated New York Labor Law §190 et seq., by failing to pay accrued vacation time. She seeks compensatory, punitive and liquidated damages, as well as costs and attorney fees. (Dkt. #23).

        Defendant now moves for summary judgment dismissing the complaint (Dkt. #60), and plaintiff has cross moved for partial summary judgment finding defendant liable for retaliatory termination as a matter of law. (Dkt. #75). For the reasons that follow, defendant's motion is

granted, plaintiff's cross motion is denied, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and the complaint is dismissed.

## FACTUAL BACKGROUND

According to plaintiff, although her employment started off well, defendant's demeanor toward her changed abruptly a few weeks later in December 2016, when defendant learned that plaintiff was dating another male dentist.[1] Plaintiff alleges that over the next few weeks, defendant subjected her to regular gender-based harassment by making "degrading" comments in front of other employees and patients which used the phrases "your man." For example, defendant would question the way plaintiff performed aspects of her job by saying, "Did your man let you do this?" or "Doesn't your man care about anything?"

Plaintiff suggests in her pleadings that the "your man" comments were references to her boyfriend, who apparently was a dentist, and that as such, the comments affected her personally. Indeed, she claims that the comments humiliated her to such an extent that they made her feel "invalid as a woman." (Dkt. #75-5 at ¶23).

Defendant asserts vigorously that the "your man" comments had nothing whatsoever to do with any boyfriend of plaintiff. They referred, quite simply, to plaintiff's former employer. In so arguing, defendant relies heavily on the multi-page transcript of a meeting between the parties on January 24, 2017, which had been secretly recorded by the plaintiff.

In or around December 2016, defendant required plaintiff to undergo additional on-the-job training from two other female office employees.

---

[1] Although defendant submitted a Statement of Facts Not In Dispute in support of his motion, that statement is largely a summary of legal arguments and not a statement of facts. As such, the Court's summary of the relevant and undisputed facts relies largely on plaintiff's account.

Plaintiff testified that she complained on several occasions to defendant's Office Manager, Sharon Fields ("Fields") about defendant's comments to her, and that Fields told plaintiff that plaintiff had not done anything wrong, and that defendant treated all female assistants in this manner because it's "just how he is." At her deposition, however, Fields testified that she does not remember whether plaintiff complained to her, or whether she ever relayed any complaints by plaintiff to the defendant.

In January 2017, plaintiff asked Fields for a day off to attend a doctor's appointment. When Fields asked why, plaintiff explained that she needed a biopsy to follow-up on some abnormal test results, and that in light of her family history of cancer, a genetic counselor had told her that she likely carries the BRCA gene, which is associated with a higher chance of developing breast cancer.

On January 23, 2017, plaintiff again complained to Fields about a "harassing" comment by defendant concerning plaintiff's pouring of dental impression adhesive: "Your man must not have cared about anything." According to plaintiff, Fields advised plaintiff to raise the issue of harassment with defendant directly.

The next morning, January 24, 2017, defendant met with plaintiff. The parties dispute the nature and purpose of the meeting: defendant claims it was a regular performance review scheduled by Fields at his request a week before, while plaintiff claims that the meeting was called by defendant spontaneously. Plaintiff surreptitiously recorded the conversation.

At the meeting, defendant identified a number of performance issues he had with plaintiff, indicated that the ongoing efforts by staff members to provide supplemental on-the-job training to plaintiff were overburdening the office, and stated that he did not feel plaintiff was performing her job in a manner that justified her $20/hour pay. He told plaintiff she was going to be "let go,"

unless she agreed to accept a $16/hour training-level position. Plaintiff declined to respond, saying she wanted to think about it, and then immediately introduced the issue of "harassment." Almost immediately, and then again after some additional argument, defendant said plaintiff was fired and ordered her to leave.

On March 20, 2017, plaintiff filed an EEOC charge alleging sex-based discrimination and retaliation, and discrimination based on genetic information, supported by a portion of the January 24, 2017 meeting transcript. On March 16, 2018, the EEOC found reasonable cause for plaintiff's discrimination and retaliation claims, and issued plaintiff a right-to-sue letter. The instant action followed. Defendant moves for summary judgment dismissing the complaint, and plaintiff has filed a cross motion opposing defendant's motion, and seeking summary judgment on the limited issue of defendant's liability for retaliatory discharge.

## DISCUSSION

**I.    Applicable Standard**

Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. A dispute is genuine where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Central Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). In considering a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant: the Court cannot make credibility determinations, weigh the evidence or draw inferences from the facts. *Id*.

## II. Hostile Work Environment (Sexual Harassment) in Violation of Title VII and the NYSHRL[2]

In order to succeed on a claim of gender-based sexual harassment based on a hostile work environment, a plaintiff must prove "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Chenette v. Kenneth Cole Prods.*, 345 Fed. App'x 615, 619-20 (2d Cir. 2009)(unpublished opinion)(*quoting Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). The required evidentiary showing sets a "high bar" as the plaintiff must show "not only that [s]he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Sealy v. State Univ. of N.Y.*, 2020 U.S. App. LEXIS 34749 at *8 (2d Cir. 2020)(quoting *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018)(internal quotation marks and alteration omitted)).

In considering whether a plaintiff has satisfied this test, a court must consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. NYC Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (internal quotation marks omitted). Thus, a "work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it. A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

---

[2] Although the Amended Complaint also mentions disparate treatment (Dkt. #23 at ¶45), plaintiff's counsel clarified at the hearing on the present motions that plaintiff's discrimination claim is limited to her allegations of sexual harassment (hostile work environment) and retaliation.

Because a hostile work environment is characterized by severe and pervasive conduct, "[i]solated incidents typically do not rise to the level of a hostile work environment unless they are of sufficient severity to alter the terms and conditions of employment as to create such an environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)(internal quotation marks and citation omitted). When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotations and citations omitted) (alteration in original).

Plaintiff argues that she was subjected to sexual harassment in the form of a hostile work environment. Specifically, plaintiff claims that: (1) she informed defendant in December 2016 that she was dating a male dentist, at which point defendant responded, "I am surprised that you're working here because most dentists I know take care of their women [financially]"; and (2) between December 2016 and plaintiff's termination on January 24, 2017, defendant made comments on an ongoing basis which referred to another individual as plaintiff's "man," or to plaintiff as the individual's "woman," by asking questions such as, "does your man let you do this?," and "doesn't your man care about anything?" (Dkt. #23 at ¶¶21-22, 29; Dkt. #75-5 at ¶¶12-20).

Initially, I find that based on the undisputed facts, plaintiff could not convince a reasonable trier of fact that "a reasonable person in the plaintiff's position, considering all the circumstances" and the "context in which [defendant's comments occurred]," would have found them so

demeaning and hostile on the basis of gender as to alter the terms and conditions of her employment. *Redd*, 678 F.3d 166 at 176.

While plaintiff now alleges that the defendant's "your man" comments were an insulting reference to her boyfriend, the transcript of the January 24, 2017 meeting between plaintiff and defendant – the authenticity and accuracy of which is not disputed by the parties – indicates that at the time, both parties understood the "your man" comments to refer to plaintiff's former employer, a Dr. Pugh, not plaintiff's boyfriend.

When plaintiff first brings up the topic of harassment and is asked to provide examples, she first identifies a comment in which defendant identified Dr. Pugh by name. (Dkt. #75-13 at 12:6-7: "Did Dr. Pugh let you get away with crappy x-rays like that?"). As a second example of the harassment about which she is complaining, plaintiff mentions a similar comment questioning the judgment of her prior employer, this time referred to as "your man," which criticized the way she poured adhesive into a dental impression tray. (Dkt. #75-13 at 12:10-18: Plaintiff: "[Y]ou said . . . when I was pouring the blue adhesive . . . 'Your man must not have cared about anything.'" Defendant: "Your previous employer, yeah.") Indeed, the context of the comments – criticisms of plaintiff's work which asked whether her "man" had allowed her to do the job of a dental assistant "like that" previously – does not logically pertain to plaintiff's boyfriend, since plaintiff had not worked for him. Indeed, while plaintiff did indicate at the January 24, 2017 meeting that she believed the "your man" comments implicated her boyfriend, she described them as doing so only indirectly, in the sense that they "degrad[ed] other dentists . . . and my boyfriend who's a dentist."[3]

---

[3] Relevant portions of the transcript include the following exchanges:

> Plaintiff: And yesterday, do you remember . . . 'Did your man' – what did you say? Yeah, you said that when I was pouring the blue adhesive. You were like, 'Your man must not have cared about anything.'

Again, plaintiff recorded the office meeting on January 24, 2017, presumably believing that tape would support her claims. On the contrary, the full transcript of the tape in no way supports plaintiff's version, but demonstrates with remarkable clarity that defendant was not demeaning plaintiff as a woman, but was merely expressing surprise that plaintiff's prior employer, Dr. Pugh, had allowed her to perform her work at a level defendant found unacceptable. Even a cursory review of the comments demonstrates that defendant was upset and exasperated, not with plaintiff's gender or her romantic relationship with some other dentist, but with her poor performance. The meeting transcript is simply not susceptible of any other sensible interpretation.

Plaintiff's suggestion that defendant's criticism of another dentist somehow implicated her boyfriend-dentist makes little sense, since plaintiff's boyfriend was apparently never her employer.

---

| | | |
|---|---|---|
| Defendant: | Your previous employer, yeah. You don't pour that all over that. | |
| Plaintiff: | You said 'Your man.' | |
| Defendant: | 'Your man'? | |
| Plaintiff: | Making it personal. | |
| Defendant: | [. . .] I've told you a million times what I expect. How much to pour in. Those pour outs. How you take [a dental] impression. I tell you the same things over and over again and [you're saying] that's harassment when I'm telling you how I want my job done? | |
| Plaintiff: | No. When . . . you're sitting there degrading other dentists . . . and my boyfriend who's a dentist. Yes. | |
| Defendant: | I didn't degrade your man. I said – I don't know what you were taught in the past, but that is not acceptable in this office. | |
| Plaintiff: | You said did 'your man' not care about anything – | |
| Defendant: | Who's 'your man'? | |
| Plaintiff: | -- and that's personal. | |
| Defendant: | I don't know if you worked for your man. I was talking about where you've worked in the past . . . is that how you did it? | |

(Dkt. #75-13 at 12:10-18, 13:10-14:11).

8

Furthermore, plaintiff's suggestion that defendant's criticism of other dentists somehow humiliated her, because she happened to be dating a dentist, strains credulity.

In light of the clear language from the transcript of the January 24, 2017 meeting, defendant was merely expressing his surprise that plaintiff's former employer allowed her to perform poorly. Plaintiff's curious interpretations to the contrary simply ignore the clear language memorialized in the transcript.

But even if I were to credit plaintiff's interpretation (which I do not) and assuming *arguendo* that all of defendant's comments asking plaintiff whether her "man" had allowed her to do her job a certain way could reasonably have been interpreted as references to plaintiff's boyfriend, plaintiff cannot establish a hostile work environment claim, as the complained-of comments simply do not objectively rise to the requisite level of severity and/or pervasiveness.[4]

While "the central statutory purpose [of Title VII was] eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace." *Redd v. N.Y.S. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771 (1976) and *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The Second Circuit distinguishes between "[complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures" and "the occasional vulgar banter, tinged with

---

[4] For the same reasons, to the extent plaintiff asserts that the hostile work environment she alleges was created in retaliation for her "several" complaints to Fields, the conduct alleged does not rise to the requisite level of pervasiveness and severity. *See e.g.*, *Hahn v. Bank of Am. Inc.*, 2014 U.S. 45886 at *73-*74 (S.D.N.Y. 2014)(incidents where a supervisor yelled at plaintiff, made critical comments about job performance, and subjected plaintiff to petty insults over a three-month period do not support a hostile work environment claim, even if premised on a retaliation theory for which the hostile work environment is alleged to have been an adverse employment action).

9

sexual innuendo, of coarse or boorish workers," which are not protected under the law. *Redd*, 678 F.3d 166 at 177 (alterations in original) (citations omitted).

Initially, the Court notes that the complained-of comments were not obscene or sexually evocative. Although "every comment underpinning a hostile work environment claim need not be 'sexual in nature,'" *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010), in order to find that the plaintiff could establish a hostile work environment, there must nonetheless be some circumstantial or other evidentiary basis by which a trier of fact could infer that the complained-of comments or conduct were discriminatory. *See Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 293 (W.D.N.Y. 2014)("[w]hile actions that are neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be 'some circumstantial or other basis for inferring that [such] incidents . . . were in fact discriminatory'")(quoting *Lioi v. N.Y.C. Dep't of Health and Mental Hygiene*, 914 F. Supp. 2d 567, 592 (S.D.N.Y. 2012)).

Here, plaintiff claims that the defendant, regularly and over the course of several weeks during her employment, questioned her job skills and criticized her performance by asking her whether "[her] man" approved of the way she did work-related tasks, with the implication that both plaintiff's job performance, and "[her] man's" opinion of that performance, were substandard. Certainly, an employer is entitled to comment about poor performance, especially with a new employee. Nor is it unreasonable for an employer unhappy with an employee's job performance to question whether the employee's prior employer allowed the same type of "crappy" work, as defendant described it. These critical comments were not sexist references. They were not, on their face, vulgar, obscene, intimidating, threatening, or severe, were not so objectively hostile or abusive as to alter the terms and conditions of plaintiff's employment. *See Byra-Grzegorczyk v.*

*Bristol-Myers Squibb Co.*, 572 F. Supp.2d 233, 247 (D. Conn. 2008) ("unfair criticism alone would not be sufficient for a hostile work environment claim"). *Compare Beale v. Mount Vernon Police Dep't*, 895 F. Supp.2d 576, *588 (S.D.N.Y. 2012)(granting summary judgment on hostile work environment claim where alleged incidents include comments suggesting plaintiff was performing sexual favors to get favorable hours and/or could find work as a prostitute, remarks that "women are useless" and "should not be on this job," and a comment referring to a female coworker as a "bitch," because such conduct, although "sophomoric and boorish," was not sufficiently severe or pervasive to alter the conditions of employment) *with Valentin v. New York City*, 1997 U.S. Dist. LEXIS 24059 at *18-*24 (E.D.N.Y. 1997)(denying summary judgment on hostile work environment claim where plaintiff's supervisor exposed her daily to threatening and sexually explicit comments and episodic viewing of pornography at work).

Construing all inferences in plaintiff's favor, plaintiff has failed to produce evidence sufficient to convince a reasonable trier of fact that defendant's comments subjected her to sexual harassment or retaliation in the form of an actionable hostile work environment. Those claims are accordingly dismissed.

**III.     Retaliatory Termination in Violation of Title VII and NYSHRL**

Defendant also moves for summary judgment dismissing plaintiff's retaliatory termination claims.

Title VII makes it unlawful to retaliate against an employee "'because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)).

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) she participated in a protected activity; (2) her employer was aware of this activity; (3) she suffered an adverse employment action; and (4) her protected activity was the but-for cause of the alleged adverse employment action. *Henvill v. Metro. Transp. Auth.*, 2014 U.S. Dist. LEXIS 149066 at *10 (S.D.N.Y. 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012)). With respect to causation, the Supreme Court of the United States recently clarified that "[a] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which was the prior standard in the Second Circuit. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

Once the plaintiff establishes a prima facie case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Verga v. Emergency Ambulance Serv.*, 2014 U.S. Dist. LEXIS 161512 at *9 (E.D.N.Y. 2014) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001)). "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Although the Court has concluded (see above) that the conduct of which plaintiff complained did not rise to the level of actionable sexual harassment, it is well established that "a plaintiff may state a prima facie claim for retaliation even when her primary claim for discrimination is insufficient to survive summary judgment." *Wimmer v. Suffolk County Police*

12

*Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) (emphasis added). "An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived." *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000).

Construing the undisputed facts in plaintiff's favor as the nonmovant, the Court concludes for purposes of the instant motions that plaintiff could have reasonably believed that she was engaging in protected activity when she complained of "harassment."

Whether the defendant was aware of plaintiff's engagement in any protected activity prior to the termination of her dental assistant position is disputed. Plaintiff avers that she made complaints of sexual harassment "on several occasions" to office manager Ms. Fields. Ms. Fields testified that she does not recall plaintiff ever having complained to her about sexual harassment, and defendant testified that he had no knowledge of any harassment complaints by plaintiff prior to the January 24, 2020 meeting. At the very least, defendant's knowledge of plaintiff's engagement in pre-termination protected activity remains a question of fact.

With respect to causation, however, the January 24, 2020 meeting transcript establishes that plaintiff had already been informed that defendant was terminating her employment as a $20/hour dental assistant, <u>prior</u> to her first mention of the term "harassment" or her first complaint about any conduct that could reasonably be understood to be harassment. Defendant began the meeting by indicating that he felt plaintiff's resumé had "over-promised and under-delivered." (Dkt. #75-13 at 2:12). He listed several perceived deficiencies in plaintiff's performance, including taking unacceptable (fuzzy or non-parallel) x-rays, "talk[ing] too much" during procedures resulting in missed steps, arguing with a patient, and repeatedly overpouring bonding agent, resulting in inadequate dental impressions. (Dkt. #7-13 at 2:13-5:14, 9:3-15).

Defendant indicated that he was going to "let [plaintiff] go,"[5] unless she would agree to accept a training-level position at $16/hour. Plaintiff asked for time to think about the training-level position, and then stated she'd like to discuss "harassment." Defendant then stated that plaintiff was fired and after some additional discussion, ordered her to leave the office. No further mention was made of the proffered training-level position.[6]

Because plaintiff was informed that her employment as a $20/hour dental assistant was being terminated prior to her first mention of harassment at the January 24, 2020 meeting, in order to make out a prima facie case of retaliation, plaintiff must produce evidence sufficient for a finder of fact to conclude that plaintiff's *pre-termination* complaints to Ms. Fields were the but-for cause of her termination on January 24, 2020. If and when her prima facie case is made, she must then rebut defendant's legitimate non-discriminatory reason for the termination.

Plaintiff has failed to produce proof sufficient to convince a reasonable trier of fact that her termination was retaliatory. Initially, plaintiff cannot rely solely on the temporal proximity (ranging from one day to a few weeks) between her harassment complaints and her termination, as it is well settled that with respect to pretext, "temporal proximity alone is not enough." *Holleman v. Art Crating Inc.*, 2014 U.S. Dist. LEXIS 139916 at *149 (E.D.N.Y. 2014).

It is undisputed that defendant consistently found fault with plaintiff's job performance, particularly with respect to her taking of x-rays and pouring of dental impressions, and that she was subjected to re-training in the weeks before she was fired. It is also undisputed that defendant's criticisms of plaintiff's performance *predated* her first complaint of harassment, since her

---

[5] Specifically, defendant stated that plaintiff was not performing at the level of "a $20/hour dental assistant," and offered plaintiff a $16/hour training position: if she didn't accept it, he would "have to let [plaintiff] go." When plaintiff said, "you might have to fire me instead," defendant replied, "Well, it's going to happen. [. . . ] So if [the training position is] not something acceptable to you, you can leave now . . ." (Dkt. #75-13 at 11:2-19).

[6] The plaintiff does not appear to have stated, and is not pursuing, any retaliatory termination or failure-to-hire claims related to the training-level position she was offered.

harassment complaints concerned the defendant's use of the phrase "your man" as part of those same critical comments.

Although plaintiff stated at the January 24, 2017 meeting that she disagreed with defendant's opinion that her performance was subpar and felt that many of his criticisms were "nit-picky," plaintiff has not identified any "weaknesses, implausibilities, inconsistencies, or contradictions" in defendant's proffered reason for terminating her employment. *Kwan*, 737 F.3d 834 at 846. To the contrary, the reasons given for plaintiff's termination centered around the very same performance deficiencies – poor x-rays and improper dental impression pours – that were the subject of the complained-of comments during the preceding weeks, "Did Dr. Pugh let you get away with crappy x-rays like that?" and "Didn't your man care about anything [when he allowed you to pour dental adhesive that way?]."

Because plaintiff has not produced any evidence beyond temporal proximity by which a jury could conclude that her termination would not have occurred but-for her alleged protected activity, or that defendant's legitimate, nondiscriminatory reason for terminating her employment was pretextual, her retaliatory termination claim must be dismissed.

For the same reasons, plaintiff's motion for partial summary judgment on the issue of liability for retaliation is denied.

### IV.   Discrimination in Violation of GINA

GINA makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). The Act defines "genetic information" to include: (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation of a disease or disorder in the employee's family members. *See*

*Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, 2017 U.S. Dist. LEXIS 77710 (S.D.N.Y. 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 96696 (S.D.N.Y. 2017) (citing 42 U.S.C. § 2000ff(4)). To establish a claim for genetic discrimination under GINA, plaintiff must plead and prove "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from [her] genetic tests." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228 at *72-*73 (D. Conn. 2013) (citation omitted).

Defendant argues that plaintiff cannot establish her GINA claim, because she cannot prove that she was discharged due to the defendant's knowledge of any genetic information: specifically, there is no evidence that defendant had any knowledge of plaintiff's genetic information or medical history. Defendant denies having been informed of plaintiff's genetic information, and Fields, the Office Manager with whom plaintiff spoke about her request for time off for a biopsy, denied having shared any of plaintiff's medical or genetic information with defendant.

Plaintiff contends that regardless of Fields' testimony, Fields "would have had to" tell defendant the reason for plaintiff's absence from work when plaintiff took the day off, and that the temporal proximity between her statements to Fields, and defendant's increasingly hostile behavior toward her, give rise to an inference that defendant's conduct toward plaintiff and subsequent termination of plaintiff's employment was related to her family history of breast cancer.

The Court disagrees. Plaintiff's assumption that Fields "would have had to" improperly disclose plaintiff's personal medical information with the defendant is entirely speculative, and there is no evidence by which a finder of fact could find any connection between plaintiff's sharing of her medical history with Fields, and defendant's alleged harassing comments to plaintiff, and/or termination of her employment, thereafter. Plaintiff's GINA claim is dismissed.

## V.     Plaintiff's Wage Theft Prevention Act and Contractual Claims

Plaintiff claims that the defendant failed to pay her for accrued and unused vacation time, in breach of her employment contract and in violation of New York's Wage Theft Prevention Act.

The exercise or decline of supplemental jurisdiction is governed by 28 U.S.C. §1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. §1367(a). Courts may appropriately decline to exercise supplemental jurisdiction where, as here, all claims over which the Court had original jurisdiction have been dismissed or otherwise removed from the case. 28 U.S.C. §1367(c).

The Second Circuit notes that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). The relevant factors include judicial economy, convenience, fairness and comity. *Id*.

Having considered these factors, the Court concludes that exercising jurisdiction over plaintiff's state law claims is inappropriate, inconvenient and unnecessary, and declines to assume supplemental jurisdiction over them.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment dismissing the complaint (Dkt. #60) is granted, and plaintiff's cross motion for partial summary judgment (Dkt. #75) is denied. Plaintiff's discrimination and retaliation claims under Title VII, and NYHRL and GINA are dismissed in their entirety, with prejudice, and the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law wage and contract claims, which are dismissed without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 10, 2021.